## HARMAN v. GOODRICH.

The statute, requiring a declaration to be filed in each case ten days before the second term of the court, applies alike to special and to general terms.

The filing of a declaration, as required by statute, is a rule of practice which the attorneys of the court are required to observe.

Though the plaintiff is non-suited, in an action of replevin, he may still offer testimony to prove ownership of property in himself, upon inquiry into the right of the defendant's possession; in order to show that the defendant could have sustained no substantial damage, as he was not the owner of the property.

The New York and English practice of moving to set aside the inquest for irregularity, is not applicable to the statute of Iowa, under which the inquiry of damages is made in open court, and not by the sheriff.

ERROR <i>to Johnson District Court.</i>

This was an action of replevin by *Peter D. Harman* against *William Goodrich*, to recover a span of horses and a wagon. At the October term of the district court, the cause was continued by consent of parties to a special term of said court, in January following; and then the defendant moved to dismiss the cause, and render judgment as in case of non suit, because the plaintiff had not filed a declaration ten days before the second term of the court, after the commencement of the suit; which motion was granted. And the defendant then applied for a jury to inquire into the right of possession to said pro-

perty, and assess the damages. After the defendant had closed his testimony in this inquiry, the plaintiff called up a witness and offered to prove that the right of property and right of possession were in him at the commencement of this suit. But this testimony was objected to, and the objection sustained by the court; who also decided that " the plaintiff could introduce no evidence in relation to the right or possession of the property, but merely as to the damages." Thereupon, the jury found for the defendant, and assessed the damages at $35, 61.

C. Bates, for the plaintiff in error. The court erred in non-suiting said plaintiff, because no declaration was filed ten days before said special term. This cause was commenced within ten days before the October term, 1842; this is admitted by the defendant's motion in the district court, to have the plaintiff non-suited, because no declaration was filed ten days before said second term of the court.

The 16th section of " An act regulating the action of replevin," provides, that, " The proceedings in an action of replevin shall, as far as practicable, be subject to the same usages and rules of practice, as in ordinary personal actions, except as otherwise provided by law, or by the rules of court." (a) There being at the time said non-suit was granted, no rule of said district court, in any manner directing when the declaration should be filed in actions of replevin; the question would depend entirely upon the construction of the 6th sec. of " An act relating to practice in the district court" &c., approved Jan. 29, 1839. (b)     By this section the plaintiff is bound to file his declaration ten days before the time at which the summons is returnable, if the suit be commenced that length of time before the term; but if not commenced ten days before the term, then the cause shall be continued ; and if no declaration shall be filed ten days before the second term, the defendant shall be entitled to a judgment, as in case of non-suit. · That the legislature intended by the " second term,"

(a) Rev. Stat., 537.          (b) Rev. Stat., 469.

Harman *v.* Goodrich.

the second *general term*, there can be, it is believed, no doubt. When-ever the law speaks of "*a term*" of the court, it means a general term, unless a special term is particularly mentioned or-referred to. (*a*) The words "second term of the court," in this section, it is believed, were intended to mean the same as the words "next term of the court," in the 20th section of "An act allowing and regulating writs of attachment," approved Jan. 7th, 1839.

The continuation of this cause by order of the court, and by the consent of the parties to a special term to be holden previously to the second general term, could not be construed into a *rule*, requiring the plaintiff to declare ten days before such special term, when there was no law, or rule of court to that effect. Had the plaintiff been *legally non-suited*, at a general term; still, the district court erred, in rejecting the evidence offered by said plaintiff, to prove his right of property and right of possession to said chattel.

Our statute regulating the action of replevin, provides that, "If the plaintiff discontinue his suit, or become non-suited, or judgment be rendered against him on demurrer," &c., then the court, on application of defendant, shall empannel a jury to inquire into the *right of property* and the right of possession of said defendant to the goods, &c.

This trial is by the law to decide the whole merits of the case, in relation not only to the possession, but the title and right to the property itself. This law does not authorize the empanneling of a jury merely to assess the damages, upon the failure of the plaintiff to prosecute his suit, as in ordinary cases of non-suit; but requires the jury to try the very same facts that they would have been called upon to try, had a declaration been regularly filed, and the general issue pleaded thereto. See sections 17, 18, 19, 20, 21. I wish to call the attention of the court particularly to sections 20 and 21, and their connexion with the three preceding ones. Sec. 20 provides, that when the jury find for the plaintiff, on an issue found, or on *inquiry of damages*, they shall assess *adequate* damages to the

(*a*) *Wilkie* v. *Jones*, Morris, 97.

plaintiff, for the illegal detention of the property, &c., and that judgment should be rendered therefor. Sec. 21 enacts, that in such case, if said property shall not have been replaced and delivered to the plaintiff, he shall in addition to the judgment for damages and costs, be entitled to a further judgment for the goods and chattels themselves. If the plaintiff, in case of a non-suit, cannot introduce any witnesses, or evidence, how can a court be advised of the plaintiff's *right of property or right of possession,* or upon inquiry for damages when the jury find for the plaintiff, of the amount of damages he ought to recover? It would be imposing too much of a hardship upon the defendant, to require of him, after being unable to establish his own right to the property or possession, to then go on and show what damage he had done to the plaintiff by the illegal detention of his property. If no witness can be called, except by the defendant, it would be difficult for the jury to ascertain what would be the *adequate* damages to the plaintiff for an illegal detention, inasmuch as the defendant would not be very apt to call witnesses, whose testimony would make against himself. That the statute in a case like this, contemplated the introduction of testimony by the plaintiff, it seems to me there can be no doubt; as the law certainly would not under any circumstances, when the TITLE to his property is to be tried, deprive him of the right to show his own title and right in the property. This action is governed entirely by the statute, and such construction should be given to it, as to protect, as far as possible, the rights and interests of each party. This cannot be done if the plaintiff is to be prohibited from introducing evidence, when the *right* or *possession* to property that he claims is to be adjudicated.

In actions of slander, libel, &c., if the defendant suffer judgment by default, still he may introduce evidence in mitigation of damages. Why not adopt the same rule when the plaintiff becomes non-suited, and it becomes necessary to inquire into the damages? Suppose in an action of replevin under our statute, that an officer should levy upon property that is exempt from execution, and the owner should replevy the property and then

Harman *v.* Goodrich.

become non-suited, would the officer be entitled to the value of property, as his measure of damages, or should the defendant be permitted to introduce evidence to show that *the property was exempt*, and therefore, that the officer could be entitled to nothing more than nominal damages? Again, suppose the defendant hired the plaintiff's cattle for ten days, and at the expiration of that time refused to re-deliver them to the plaintiff, and thereupon he replevied them, and then became non-suited; should he not, on inquiry of damages, be permitted to show these facts in mitigation of damages?

The action of replevin is, *sui generis*, and must be governed by rules the best calculated to carry out the object of the law. The title of the property was in no manner settled by the non-suit, and the plaintiff, therefore, ought not to be precluded from introducing evidence to show title in himself. This would be but justice, and I know of no authority or law against it. See 2 Wheat., S., 1226, 1230, *note* (1.); 3 Wend. 196; and 3 Gill & Johnson, 247. This last case was a replevin bond, and the defendant, who suffered judgment by default, was permitted to introduce evidence to show that the plaintiff in the action of replevin, (said plaintiff in replevin having also become non-suited,) owned the property, in mitigation of damages. This is going farther than the district court was requested to go, by the plaintiff. But the rule established is the same asked for in the district court, though extended in its application to parties not connected with the original suit.

The manifest injustice that would necessarily follow the adoption of the decision of the district court, as a rule, or law of evidence, is a strong argument against it. Take this case—The plaintiff commenced his suit within ten days before the October term of the court, but did not file a declaration; supposing the law gave him until ten days of the next regular term to file it, but a special term was appointed to be holden before the second general term, and at the special term, the plaintiff was non-suited for want of a declaration being filed ten days before said term, and then a jury called to inquire of the

2

damages, and also to *settle the right of the property claimed* by said plaintiff; and he not permitted to introduce a witness to prove that he had in fact, a good title to the property, to mitigate damages, or for any other purposes whatever; and the whole matter proceeded exparte to decide and settle the plaintiff's title. The defendant had no interest in the property whatever, except that of an officer holding it by virtue of an execution against a third person, and the possession, in the absence of any other evidence, would entitle him to a verdict, and the plaintiff rendered liable to pay as damages, the value of the property and something more for its detention, with costs; though he was really the *bona fide* owner of the property, and had his witness ready in court to prove that fact in mitigation of damages.

*James P. Carlton,* for the defendant. The plaintiff in error, in this case, seeks to reverse the judgment of the court below, on the ground that the court erred. 1. In nonsuiting the plaintiff on the defendant's motion, he the said plaintiff having failed to file a declaration ten days before the commencement of the second term of the court, after the suit had been commenced. 2. In not permitting the plaintiff, upon a writ of inquiry, to introduce testimony to show the right of property, or right of possession, to be in said plaintiff.

As to the first, the defendant in error contends that there was no error, and, admitting for the argument, that the point is properly before the court, he relies upon the statute, page 469, § 6. By the record of the case, it will be discovered, that the plaintiff commenced his suit on the 20th day of September, 1842; that the writ was made returnable to the next term of the court, which commenced on the 5th Monday of October, 1842; that at that term of the court no declaration was filed; and that the case was continued by consent of parties, and the order of the court, until the January special term, 1843; that at that term there was still no declaration filed; and that thereupon the defendant moved the court to give judgment as in case of non-suit, in pursu-

ance to the statute in such case made and provided.   The plaintiff in error contends that the " second term " used in the statute means the second regular term, and refers the court to " Iowa Supreme Court R." of 1841, page 30. (*a*) This, however, the defendant thinks, cannot be the meaning of the statute, because special terms are just as much recognized by the law as general and regular terms.   They are authorized by the statute, and when made, become just as much a term of the court as though they came on at the time prescribed by law.   The special term was appointed for the hearing of this, as well as other causes; the parties were in court, and the cause continued, by consent and by order of the court, to that term.   It was a term, therefore, at which disposition could be made of it; and so far as the case was concerned, it was to it a *second term ;* and the plaintiff failing to comply with the requisites of the statute was therefore subject to its operation. The case cited by the plaintiff in error is not analogous The statute under which that decision was made must be construed strictly : in this case it is not so construed. There the parties were not in court, here they were—there the parties had not by their own act and consent made the special term, a term to them—here they had.   And further, the decision of the court in that case seems to go upon the ground, that the special term had not been established at the time the publication was ordered, implying thereby that if it had been, it would have been a second term, as to that case.   Here the parties were in court, and agreed to the term ; and therefore, if a term at all, it must have been a second term, because one term had already elapsed.   The argument, drawn by the plaintiff in error, " *ab inconvenienti,*" is not applicable here. What inconvenience could result, when the party was in court —knew all the proceedings of the court, and assented to the same?   But again, is this point before the court?   The precipe, writ, and motion are no part of the record, unless made so by a bill of exceptions.   2 Blackf., 11 ; *ib.*, 402 ; 1 Scam. 233.

(*a*) *Wilkie* v. *Jones*, Morris, 97.

This point should have been presented to the court by a bill of exceptions, in order to have made it a part of the record; and in the absence of that, the court cannot take notice of it. The court, without the writ, cannot tell how many terms have intervened from the commencement of the suit; and, in the absence of an error being *affirmatively* shown, the court always presumes that the court below acted correctly. *Hudson* v. *Matthews*, (Morris, 94.)

As to the second error, the defendant contends, in the first place, that this is not the proper court in which to correct errors in inquests. And to support this position the court is referred to *Morton* v. *Bailey*, 1 Scam., 213. The court there decided that the defendant, by suffering judgment by default, was out of court, and had no right to except to testimony; that he was permitted to cross-examine witnesses, but could not introduce witnesses, or make defence to the action. They say, further, that should improper testimony, or wrong instructions be given, the proper course is to apply to the court to set aside the inquest, and grant a new inquest. In that case, as in the one now before the court, the inquest was taken in open court. The same doctrine is held in 10 Petersdorff's R., 662 to 667 inclusive. The application must be made to the court to which the inquisition is returned, to set it aside. 3 Wendall, 478, to be found in Johnson's Digest, page 295, ¶ 13. In the case now before the court the plaintiff was non-suited, and was therefore out of court; and if any error was committed in the proceedings, the proper course was to apply to the court below to set aside the inquest. He stands in precisely the same situation in which the defendant would have stood, if judgment had been rendered against him by default. From the authorities above cited, if it be the subject of error, the record should show that an application had been made to the court to set it aside, together with the reasons upon which the application was based, and that the court refused so to do, which refusal should have been the ground of error. But the plaintiff in error relies upon the statute. By the old statute, which was then in force, page

Harman v. Goodrich.

400, it was provided, that if the plaintiff discontinue his suit, or become non-suit, &c., the court, on application of the defendant or his attorney, shall empannel a jury to inquire into the right of property, and right of possession of the defendant, (not of the plaintiffs) to the goods and chattles in controversy. It is furthermore provided, that if the jury find that the defendant had the right of property, or was entitled to the possession of the same at the commencement·of the suit, they shall assess damages for the defendant, as may be right and proper, together with costs of suit, for which judgment shall be rendered against plaintiff.    Now there is nothing in either of these provisons which will authorize the plaintiff to come in and contest the right of possession by the introduction of testimony.    He may, it is true, cross-examine the witnesses introduced upon the part of the defendant, as in case of default, and this was done; but to allow him to introduce testimony, would be to destroy the character of a non-suit. It would be the shadow without the substance.    It would place him out of court;·and yet give him all the rights he could possibly claim if he were in court.    And for this the plaintiff in error contends; and refers, particularly, to the 20th section of the act regulating replevin, page 400.    The court, in looking over that section, will at once discover, that this is intended to cover the case where the plaintiff obtains judgment by default against defendant.    The first two sections, 17 and 18, refer to those cases alone where plaintiff is out of court; the 19th section, where issue is joined between the parties and verdict for defendant; and the 20th, where issue is joined between parties, and verdict for plaintiff; or were defendant is out of court, and a writ of inquiry ordered. It certainly can have no reference to the 17th and 18th sections, as contended for by plaintiff.    The plaintiff, by the non-suit, admits that the defendant has sustained damages; but according to the argument of the plaintiff in error, he may come in and prove the right of property in himself, the same as though he were in court, and thereby defeat the defendant entirely.    He

loses nothing, then, by being non-suited. Certainly such doctrine is not correct.

But again, suppose that the plaintiff in error had a right to introduce testimony to show the right of property or right of possession in himself, in mitigation of damages; is there any thing in the bill of exceptions showing that the court below prevented him from so doing? The bill of exceptions does not state that this evidence was offered in mitigation of damages, nor does it show that the court prevented the introduction of testimony for that purpose. The court above, as before stated, will always presume that the court below did right, unless the contrary expressly appears. *Hudson* v. *Matthews*, (Morris, 94.) By the bill of exceptions it appears, that the court below decided that the plaintiff could introduce no testimony in relation to the right of property or right of possession, but merely as to damages. This clearly shows that the court decided that such testimony might be introduced as to damages, particularly when this court takes into the account that the witness was offered for the purpose of proving that the right of property or right of possession was in plaintiff in error generally, and not for any special purpose, not to mitigate damages. The court will notice particularly in the bill of exceptions, what the plaintiff in error sought to prove; the overruling that, is and must be the only ground of error. He offers the proof generally and not in mitigation of damages, and as it stands it might either go for that purpose or to defeat the defendant entirely. Can the court tell for what purpose it was offered, and if not, will the court say that the court below erred in rejecting it? The plaintiff in error must show error in the proceedings in the court below affirmatively. *Hudson* v. *Matthews*, above referred to. The court will infer nothing; if they do, it will be in favor of the court below. The plaintiff contends that it was only proper in mitigation of damages; and if so, it should appear that it was so offered, and when offered for that purpose was rejected. The authorities (particularly Gill and Johnson) referred to by plaintiff, show

that the testimony was offered specially—that is, in mitigation of damages. The plaintiff in error states, in his bill of exceptions, that he offered to prove, by a certain witness, that the right of property and right of possession were in him at the commencement of the suit. He does not state for what purpose he offers the testimony. The court below decided that no testimony could be introduced in relation to the right of property and right of possession, but merely as to damages. This evidently means that the plaintiff offered it for one object, and the court decided it might be introduced for another, and for the very object for which the plaintiff in error now contends. That the court decided that testimony might be introduced as to damages, is clearly shown by the bill of exceptions; and if this court infers any thing from the language of the bill of exceptions, they must infer that the plaintiff by the testimony sought to go beyond a mitigation of damages, and that it was therefore properly rejected by the court. Exceptions not properly presented will not be regarded even in criminal cases. (15 Wend. 181, found in John. Dig., page 297, ¶ 77.)

Although the argument drawn from inconvenience is good in some instances, it is not good in this case. If any hardship grows out of the case to the plaintiff in error, it is the result of his own laches. Nor can imaginary cases operate upon the one before the court. It is not safe to decide principles of law by the supposition of extreme cases. The question is and should be, what is the law? That once ascertained, it must be maintained, however hard it may operate in particular cases.

*Opinion by* MASON, C. J. The first question presented for consideration in this case is, whether a special term of the district court is such a term as the statute contemplates when it declares that "if no declaration shall be filed ten days before the second term of the court, the defendant shall be entitled to judgment as in case of non-suit." Why should it be said that this language refers to a *general* rather than to a special term? The latter is a *term* provided for by law as much as the former:

When a case is continued, it is to the next legal term, whether general or special. The cases on the calendar are then to come up for trial, and declarations should be filed as directed by statute.

It is true that where a person enters into a recognisance to appear at the next term, and a special term is afterwards appointed, his recognisance will not be legally forfeited by his non-appearance at that special term. The recognisance is in the nature of a contract to be performed on a particular day. That day cannot be changed by one of the parties. But the filing of a declaration as required by the statute is merely a rule of practice which the attorneys of the court are required to understand and observe. In the present case, the argument against such a construction would be still farther weakened by the fact, that the cause was continued expressly to the special term. The ruling of the court below in this respect was clearly correct.

The plaintiff having been non-suited, a jury was empanneled in pursuance of the statute " to inquire into the right of property and right of possession of the defendant to the goods and chattels in controversy." Before that jury the plaintiff offered testimony to prove ownership of property in himself. This, on being objected to, was rejected by the court, and we are now to inquire whether this rejection was erroneous.

The case in 1 Scam. 213, seems to favor the position taken by the defendant in error; but that was an action of assumpsit, in which the defendant had made default, and a jury had been called to assess the damages. The court in that case decided · that the defendant had no right to introduce witnesses.

But our statute seems to contemplate that after the plaintiff, in an action of replevin, has been non-suited, he may still show that the defendant has sustained no substantial damage, for the reason that he was not the owner of the property. It declares that in such cases a jury shall be empanneled to inquire into the right of property and right of possession of the defendant. That jury can certainly decide more understandingly after hearing testimony on both sides. And if the plaintiff in

such cases is allowed to introduce any evidence at all, that which was proffered and rejected in this case was certainly material and proper. The case of *Belt* v. *Worthington*, 3 Gill and Johnson, 247, is in point, and sustains the position just taken.

But it is contended, that even if there was error in the ruling of the court below, the proper remedy was to move the court to set aside the inquest. Such is the course prescribed in New York and England, for the reason that there, an inquiry of damages in case of non-suit or default does not take place in open court, as with us, but before the sheriff, and a jury summoned by him for that purpose. If an error be committed by the sheriff, it is very proper that the court to which the inquest is returned should set the same aside and direct a new inquiry of damages. But it would seem at least unnecessary to apply to the district court to set aside an inquest, because that very court had committed an error. The courts in Illinois seem to have followed the New York rule, probably without reflecting that the reason of the rule had ceased.

The judgment below will be set aside, and a new trial awarded.

Judgment reversed.